

# NUMBER 13-24-00325-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## IN THE MATTER OF THE MARRIAGE OF MEILYN RUTZ DANSKI DE OLIVEIRA AND EDREY CLARENCE OLIVEIRA AND IN THE INTEREST OF S.L.D.O., A CHILD

---

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 6 OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Cron
Memorandum Opinion by Justice West**

This is an appeal of a divorce decree and child support and possession order. Appellant Edrey Clarence Oliveira (Father), pro se, argues (1) the trial court lacked subject-matter jurisdiction to enter the final judgment under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), (2) the trial court committed reversible error when it failed to issue requested findings of fact and conclusions of law, and (3) there was insufficient evidence to support the final judgment. We affirm.

# I. BACKGROUND

Appellee Meilyn Rutz Danski De Oliveira (Mother) filed an original petition for divorce on June 27, 2023.[1] The petition stated that Mother was "a domiciliary of Texas for the preceding six-month period and a resident of [Hidalgo County] for the preceding ninety-day period." On July 5, 2023, Mother filed an emergency motion for temporary restraining order (TRO) and temporary orders for child possession and support. Father filed a counter petition for divorce on July 18, 2023, which included a request for a temporary restraining order against Mother. Father's counter petition stated he was "a domiciliary of Texas for the preceding six-month period and a resident of [Hidalgo County] for the preceding ninety-day period."

The trial court granted Mother's TRO and held a hearing on the temporary orders. Father testified that the parties are both from Brazil but have lived in Texas for many years, married in Texas in 2016, and their daughter, S.L.D.O., was born in Texas in 2021. The family moved from McAllen to West Virginia to be closer to Father's family and to reconcile some of the couple's marital issues. According to Father, they "[a]greed to be there for at least six months," but their agreement fell apart after Mother went to Brazil with S.L.D.O. without his permission and would not allow him to take S.L.D.O. back to the States. Mother, after later returning to West Viriginia, moved back to Texas with S.L.D.O. without Father's permission. Father testified that Mother told him she was taking S.L.D.O. to the park and then informed him that she and S.L.D.O. were boarding a flight back to Texas. Four emails from Mother to Father sent on June 28, 2023, were admitted into evidence. The first, sent at 12:54 p.m. stated:

---

[1] Mother amended her petition on November 20, 2023, and again on February 13, 2024.

2

[Father],

After going to the playground, we are making our way to Texas[]. I will be spending some time in Ambars house[]. [S.L.D.O.] is well[]. She is safe[].

We will be in McAllen for a while[], until we can resolve our situation. I feel you gave me no other option[].

Call me at any time if you want to talk to/see her.

The next email, sent three minutes later, states: "Also[], please let me know if you would like to come see her in McAllen. We can make arrangements until [the] judge final decision is made[]. Thank you." The third email, again sent three minutes later, stated that she left her car at the airport and gave details, with attached images, about how to find the keys and pay for parking. The last message at 1:10 p.m. states, "I just got $998 from our joint bank account[], so I can have some cash on me in case I need[]." Father testified that while Mother appeared from the emails to be cooperative in facilitating visitation, she was currently limiting his visitations with S.L.D.O.

Mother testified that because she was weaning S.L.D.O. off breast feeding, she was preventing Father from overnight visitations. She further testified that the parties' marriage fell apart because Father was disrespectful towards her. She also did not feel comfortable continuing to live in West Viriginia because his parents' house had rat feces in it, which continued to appear even after she cleaned the house. She explained that Father's parents live in West Viriginia for half of the year and live in Brazil for the other half. When they moved to West Viriginia, his parents' house had been vacant for six months, and mice had gotten inside. She also testified that the only people she knew in West Viriginia were Father's parents and sister. On June 28, 2023, she moved into a mutual friend's guestroom in McAllen and planned to stay there until she started work

3

again as a registered nurse. She testified that the family had strong ties to Texas because they previously lived there for many years and had a close-knit church community.

Both parties requested to be the primary caregiver of S.L.D.O., who was almost two years old at the time of the hearing. Father requested that he be appointed S.L.D.O.'s primary caregiver because he had a "stable" and "establish[ed] home" in McAllen, which was a rental home in their former neighborhood, and he was employed, while Mother had a temporary living situation and was unemployed. Mother testified that she should be the primary caregiver because she was currently weaning S.L.D.O. off breast feeding, and since S.L.D.O.'s birth, she had been the parent primarily involved in her day-to-day care. The trial court granted, among other provisions, joint managing conservatorship, primary custody to Mother, and ordered Father to pay child support.

Father filed a "Plea to the Jurisdiction and, in the Altern[]ative, Motion to Decline Jurisdiction Due to Unjustifiable Conduct" on December 19, 2023.[2] Father argued that the trial court did not have jurisdiction under the UCCJEA because Mother and S.L.D.O. did not live in Texas for the six months preceding the filing of the suit, and S.L.D.O. lacked any significant connection to Texas. He then argued that West Viriginia was S.L.D.O.'s home state because she "had already established deeply rooted connections" there, and she "actively engaged in holiday traditions and celebrations with family and friends within" the state. Father argued in the alternative that Mother "engaged in unjustifiable conduct" when she "abducted" S.L.D.O. and traveled to Texas without his knowledge for "the apparent purpose of attempting to gain a favorable advantage under Texas jurisdiction."

___

[2] Father was represented by counsel at the beginning of litigation and proceeded pro se after the hearing on the temporary orders.

4

Thirty-three exhibits were filed by the parties prior to the final hearing, including Mother's affidavit.[3] In her affidavit, Mother stated that the parties were married in Hidalgo County on April 26, 2016, and lived there until October 31, 2022. On November 1, 2022, they agreed to visit Father's parents' house in West Virginia. Mother further alleged:

> My intentions were to evaluate whether our moving there would work for us and to see if our relationship would show any improvement. We visited his parents' home[] but never got our own . . . fixed residence. As I did not feel comfortable with the living conditions, my husband and I agreed that I could visit my family in Florida and Brazil until we decided where we would live. With his permission, I visited my family in Florida and Brazil, with my child always with me, during the periods noted below.
>
> On May 3, 2023, my child and I returned to West Virginia, but still having no place of our own, not feeling comfortable imposing on his family in West Virginia and because of personal conflict with my husband, on June 28, 2023, I decided to return to our home state of Texas.

Mother then listed the locations S.L.D.O. had lived since her birth.[4] According to these dates, S.L.D.O. had lived in Texas for about one year and three months, West Virginia for three months, Florida for two months, and Brazil for four months.

The trial court held the final hearing on March 8, 2024. At the beginning of the hearing, the parties argued Father's plea to the jurisdiction. Father contended that Mother failed to establish that the trial court had jurisdiction under Texas Family Code Section 152.201. Pointing to Mother's affidavit, he contended that S.L.D.O. was not in Texas for the six months prior to the filing of Mother's original petition, S.L.D.O. did not have a significant connection to Texas, and, therefore, Texas was not her home state. *See* TEX.

---

[3] It is unclear from the appellate record which party filed the exhibits.

[4] She noted the dates as follows: McAllen, Texas, from July 29, 2021, to October 31, 2022, and from June 29, 2023, until present; West Viriginia from November 1, 2022, to November 30, 2022, and again from May 3, 2023, to June 28, 2023; Florida from December 1, 2022, to January 3, 2023, and from April 24, 2023, to May 2, 2023; and Brazil from January 4, 2023, to April 23, 2023.

FAM. CODE §§ 152.102(7), 152.201(a)(1). According to the discussion on the record, Father filed a divorce proceeding in West Viriginia after the commencement of this case, and the West Viriginia court entered a written judgment finding that it did not have subject matter jurisdiction over the case. Father argued that, even though the West Virginia court found it did not have jurisdiction, it incorrectly "stated that Texas is the home state of the child." He also contended that S.L.D.O. had "strong connections [to] Florida and Brazil" and neither of those "two jurisdictions have been addressed at all."

Mother argued that Texas was S.L.D.O.'s home state because (1) her parents were married in Texas, (2) she was born in Texas, (3) she lived in Texas for the first "year and a half" of her life, (4) the family moved to West Virginia for only a short amount of time, (5) Father's work was based in Texas, (6) the child's "community" was in Texas, (7) the family's church was located in Texas, and (8) Father judicially admitted in his counter petition that he is domiciled in Texas. She further relied on the West Viriginia judgment, which held that Texas, not West Viriginia, had jurisdiction. Father stated that he was domiciled in Texas and West Viriginia but contended that was irrelevant to the trial court's subject-matter jurisdiction over S.L.D.O., and the evidence Mother presented only showed that Father and Mother had connections to Texas, not S.L.D.O. The trial court denied Father's plea to the jurisdiction.

During the rest of the hearing, the parties agreed on the terms of the divorce and property division and only possession and access to the child were disputed. The trial court granted joint managing conservatorship, granted Mother the exclusive right to designate the child's primary residence, awarded Father extended standard visitation,

6

and ordered Father to pay child support consistent with the amount established in the temporary orders. This appeal ensued.

## II.  UCCJEA

By two sub-issues to his first issue, Father argues that the trial court lacked subject-matter jurisdiction over the case under the UCCJEA because (1) West Viriginia, not Texas, is S.L.D.O.'s home state, and (2) Mother engaged in "unjustifiable conduct" under Texas Family Code Section 152.208(a). *See* TEX. FAM. CODE §§ 152.201(a), 152.208(a).

### A.  Standard of Review & Applicable Law

Whether a trial court has subject matter jurisdiction is a question of law we review de novo. *Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013) (citing *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004)). "In our de novo review, we bear in mind that the trial court 'is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we will not disturb the court's resolution of evidentiary conflicts that turn on credibility determinations or the weight of the evidence.'" *In re C.J.S.*, 702 S.W.3d 573, 591–92 (Tex. App.—Houston [1st Dist.] 2024, no pet.) (quoting *In re I.I.G.T.*, 412 S.W.3d 803, 806 (Tex. App.—Dallas 2013, no pet.)).

Subject matter jurisdiction in child custody matters is determined by the UCCJEA set out in Chapter 152 of the Texas Family Code. *In re Dean*, 393 S.W.3d 741, 746 (Tex. 2012) (orig. proceeding). Section 152.201(a) provides four scenarios under which a Texas court may exercise jurisdiction for an initial custody determination. *See* TEX. FAM. CODE § 152.201(a). Under that section, unless a court has jurisdiction under an

7

emergency order provided under Section 152.204, a court has jurisdiction to make an initial child custody determination only if:

> (1)     this state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;
>
> (2)     a court of another state does not have jurisdiction under Subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208, and:
>
>> (A)     the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence; and
>>
>> (B)     substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;
>
> (3)     all courts having jurisdiction under Subdivision (1) or (2) have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under Section 152.207 or 152.208; or
>
> (4)     no court of any other state would have jurisdiction under the criteria specified in Subdivision (1), (2), or (3).

*Id.* "Home state" is defined as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* § 152.102(7).

Under Section 152.208, a court of this state must decline to exercise its jurisdiction if the person seeking to invoke its jurisdiction has "engaged in unjustifiable conduct" unless one of three conditions are met:

> (1)     the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

8

(2)     a court of the state otherwise having jurisdiction under Sections 152.201 through 152.203 determines that this state is a more appropriate forum under Section 152.207; or

(3)     no court of any other state would have jurisdiction under the criteria specified in Sections 152.201 through 152.203.

*Id.* § 152.208(a). The statute does not define "unjustifiable conduct." *See id.* The purpose of the statute is to deter parents from behaving reprehensibly "for the purpose of establishing jurisdiction in a desired state." *Barabarawi v. Rayyan*, 406 S.W.3d 767, 776 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citation omitted); *see In re Lewin*, 149 S.W.3d 727, 740 (Tex. App.—Austin 2004) (orig. proceeding).

**B.     Home State**

Father first argues Mother failed to establish subject-matter jurisdiction under any of the four subsections under Texas Family Code Section 152.201(a) because, at the time Mother filed her original petition, West Viriginia was S.L.D.O.'s home state. He argues:

> [P]ursuant to Texas Family Code section 152.201(a), it is evident that at the initiation of the proceedings on Ju[ne] 27, 2023, West Virginia, and not Texas, held the status of the child's "Home State." This determination is grounded in the fact that the child neither resided nor was physically present in Texas at the time of filing, nor at any juncture within the preceding six months. Additionally, West Virginia, having jurisdiction, consistently retained such authority and did not decline to exercise jurisdiction. Crucially, at the commencement of the proceedings, the child lacked significant connections within the state of Texas, and there existed no substantial evidence regarding the child's care, protection, training, and personal relationships in this jurisdiction.

We agree with Father that the trial court lacked subject matter jurisdiction by virtue of Section 152.201(a)(1) because Texas was not S.L.D.O.'s home state as she did not live in Texas for six months before Mother filed her original petition for divorce. *See* TEX. FAM. CODE §§ 152.102(7), 152.201(a)(1); *Canales v. Riquelme*, No. 13-09-080-CV, 2010

9

WL 4657951, at *3–4 (Tex. App.—Corpus Christi–Edinburg Nov. 18, 2010, no pet.) (mem. op.) (holding under the definition of "home state" Texas was not the children's home state because they had not lived in Texas for six consecutive months prior to Mother's filing of her original petition for divorce). However, West Viriginia was also not S.L.D.O.'s home state for the same reason. *See* TEX. FAM. CODE §§ 152.102(7), 152.201(a)(1); *Canales*, 2010 WL 4657951, at *3–4.

Turning to section 152.201(a)(2), a court of this state has jurisdiction over a child custody proceeding if a court of another state does not have jurisdiction as the child's home state, and (1) "the child and the child's parents" have a "significant connection" to Texas "other than mere physical presence," and (2) "substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships." *See* TEX. FAM. CODE § 152.201(a)(2).[5] According to the parties at the final hearing, a point Father ignores on appeal, the West Viriginia court's judgment found that it was not S.L.D.O.'s home state and did not have subject matter jurisdiction over the case.[6] *See id*. Here, the trial court was presented with evidence that Father filed a parallel proceeding in West Viriginia, and the West Viriginia court held it did not have jurisdiction over the case. *See id.* It is undisputed that S.L.D.O. was born in Texas, lived there for most of her life, Mother and Father lived in Texas for several years prior to S.L.D.O.'s birth, were married in Texas, Father's work was located in Texas, and they had a strong church community in Texas. *See id.* Evidence was also introduced that S.L.D.O.'s pediatrician

<hr />

[5] Subsection (a)(2) alternatively grants jurisdiction if "a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under Section 152.207 or 152.208" which is not applicable here. TEX. FAM. CODE § 152.201(a)(2).

[6] Mother's attorney attempted to admit the West Viriginia judgment at the hearing, but the trial court stopped him because the court believed that the judgment had already been filed in the record.

and dentist were in McAllen. *See id.* While Father argued that S.L.D.O. had strong connections to West Viriginia through family, S.L.D.O. only spent about three months in West Viriginia.

From this evidence, we hold the trial court had subject matter jurisdiction under section 152.201(a)(2). *See id.*; *cf. Canales*, 2010 WL 4657951, at *4 (holding that neither Texas nor Washington was the youngest child's home state but holding "that the Washington state was in the proper position [under section 152.201(a)(2)] to assert jurisdiction over the initial custody dispute" because the child was born in Washington, had lived there since birth, and there was "no evidence that [the child] had significant connections with the State of Texas"); *In re M.Z.*, No. 02-25-00100-CV, 2025 WL 1278684, at *6 (Tex. App.—Fort Worth May 2, 2025, no pet.) (mem. op.) (holding that the Texas court could not exercise jurisdiction under section 152.201(a)(2) because the child had never lived in Texas, had resided since birth in Illinois, and "the record provided no evidence that Illinois has declined to exercise jurisdiction over [the child]'s child-custody proceeding"). We overrule this sub-issue.

## C.     Unjustifiable Conduct

Father next argues that the trial court did not have subject matter jurisdiction because Mother engaged in "unjustifiable conduct" under Texas Family Code Section 152.208(a) when she "abducted" S.L.D.O. to Texas without his permission. *See* Tex. Fam. Code § 152.208(a). He further argues that none of the three exceptions apply to this case. *See id.*

Mother testified that she moved from West Viriginia to Texas with S.L.D.O. because of the toxic nature of the couple's relationship, and she did not feel comfortable

11

raising S.L.D.O. in West Viriginia. She explained that her only connections to West Viriginia were Father's family, and Father's parents' house—where they were supposed to live—was not in a suitable condition. Indeed, according to the parties' testimony at the temporary hearing, Mother lived primarily at Father's sister's house during her time in West Viriginia. While Mother left the state without Father's permission, she told him that same day she was leaving, she informed Father where she was staying, she did not hide S.L.D.O., and she did not prevent Father from visiting S.L.D.O. *See In re C.J.S.*, 702 S.W.3d at 603 (holding that there was no evidence that Mother engaged in unjustifiable conduct when she moved from Louisiana to Texas in part because there was no evidence that she "secret[ed], retain[ed], or restrain[ed]" the child or that she abducted the child or prevented Father from seeing the child). Father contended that while Mother's emails demonstrated that she was open to him visiting S.L.D.O., she was actively restricting his visitations. Mother alleged that she was merely preventing overnight visitations because she was weaning S.L.D.O. off breast feeding. As the factfinder, the trial court was free to believe Mother's testimony and discredit Father's. *See id.* at 591. We may not disturb the factfinder's evidentiary conflicts that turn on credibility determinations or the weight of the evidence. *See id.*

Moreover, Mother was not attempting to relitigate a child custody order and seek a more favorable outcome by filing a petition in Texas. *See id.* at 602–03 (holding that there was no evidence that Mother engaged in unjustifiable conduct when she moved from Louisiana to Texas in part because she did not "hide the [pending] Louisiana Action from the Texas trial court"); *cf. In re Lewin*, 149 S.W.3d at 740 (holding that Father engaged in unjustifiable conduct as he "reasserted his Texas residency and sought to

12

modify the custody order in Milam County raising the same allegations of abuse that had been considered and rejected by the Canadian court"); *In re S.L.P.*, 123 S.W.3d 685, 689–90 (Tex. App.—Fort Worth 2003, no pet.) (holding Mother engaged in unjustifiable conduct because she "failed to apprise the trial court that she had participated in previous court proceedings" regarding custody or "that her parental rights had been terminated," and that she had refused to return children to the father for nearly two years in violation of a standing custody order).

Father further argues that Mother deliberately misrepresented her domicile "to manipulate jurisdictional requirements" and improperly invoked Texas's jurisdiction for a jurisdictional advantage. He points to Mother's original petition, which was filed on June 27—the day before she left West Viriginia and traveled to Texas. Again, however, the trial court was free to believe Mother's explanation as to why she moved to Texas. *See In re C.J.S.*, 702 S.W.3d at 591. Father also fails to explain how Mother obtained a jurisdictional advantage as Father testified that he was domiciled in both Texas and West Viriginia. *See Barabarawi*, 406 S.W.3d at 776 (overruling Mother's argument that the trial court should have declined jurisdiction in part because it was not apparent how Father obtained any legal advantage by leaving the country without the child and divorcing her abroad).

We conclude Texas Family Code Section 152.208 did not deprive the trial court of subject-matter jurisdiction. *See In re C.J.S.*, 702 S.W.3d at 603; *Barabarawi*, 406 S.W.3d at 776; *cf. In re Lewin*, 149 S.W.3d at 740; *In re S.L.P.*, 123 S.W.3d at 689–90. We overrule this sub-issue, and, accordingly, overrule Father's first issue.

### III.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

By his second issue, Father argues that the trial court erred when it did not enter findings of fact and conclusions of law, and the error was harmful. Father timely requested findings of fact and conclusions of law after the trial court issued the temporary orders and again after the trial court entered the final judgment. *See* TEX. R. CIV. P. 296. When the trial court failed to make the requested findings, Father timely filed notices of past-due findings. *See* TEX. R. CIV. P. 297.

Texas Rule of Civil Procedure 296 provides that "in any case tried in the district or county court without a jury, any party may request the court to state in writing its findings of fact and conclusions of law." *Id.* "A case is 'tried' when a court holds an evidentiary hearing." *Willie v. CenterPoint Energy Res. Corp.*, No. 14-23-00937-CV, 2025 WL 380519, at *5 (Tex. App.—Houston [14th Dist.] Feb. 4, 2025, no pet.) (mem. op.) (citing *Gen. Elec. Capital Corp. v. ICO, Inc.*, 230 S.W.3d 702, 711 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)). When a party makes a proper request under Rule 296, "the trial court is obligated to make findings of fact and conclusions of law." *Hous. Auth. of City of El Paso v. Beltran Elec. Contractors, Inc.*, 550 S.W.3d 707, 711 (Tex. App.—El Paso 2018, pet. denied) (citing TEX. R. CIV. P. 297). "The trial court's failure to comply with a proper request to prepare and file findings of fact and conclusions of law is presumed harmful, unless the record affirmatively shows the complaining party suffered no injury." *Willie*, 2025 WL 380519, at *5 (citing *Zieba v. Martin*, 928 S.W.2d 782, 786 (Tex. App.—Houston [14th Dist.] 1996, no writ)). "The test for harm is whether the circumstances of the case require an appellant to guess the reason for the court's ruling." *Id.* (citing *Goggins v. Leo*, 849 S.W.2d 373, 379 (Tex. App.—Houston [14th Dist.] 1993, no writ)); *Seabourne*

14

*v. Seabourne*, 493 S.W.3d 222, 230 n.10 (Tex. App.—Texarkana 2016, no pet.) ("The test for harm looks to whether the reasons for the trial court's ruling are obvious from the record."). "In other words, the issue is whether the appellant was prevented from properly presenting his case on appeal." *Willie*, 2025 WL 380519, at *5 (citing *Goggins*, 849 S.W.2d at 379); *see In re I.J.D.*, No. 13-23-00005-CV, 2023 WL 5487381, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 24, 2023, no pet.) (mem. op.).

However, "a party is not entitled to findings of fact and conclusions of law in every case." *Hous. Auth. of City of El Paso*, 550 S.W.3d at 711. For example, "when a trial court makes a discretionary decision—one we review under the abuse-of-discretion standard— the trial [court] can, but is *not required* to issue[] findings of fact and conclusions of law." *Id.* (collecting cases); *see In re I.J.D.*, 2023 WL 5487381, at *3 (citing *Hous. Auth. of City of El Paso*, 550 S.W.3d at 711); *Samuelson v. United Healthcare of Tex., Inc.*, 79 S.W.3d 706, 710 (Tex. App.—Fort Worth 2002, no pet.) ("Where an abuse of discretion standard of review applies to a trial court's ruling, findings of fact and conclusions of law, while helpful, are not required.").

In his appellate brief, Father states:

The harm in this case is both presumed and demonstrated. The trial court made critical rulings on highly contested issues, including:

Naming [Mother] primary conservator with exclusive rights to determine the child's residence and education; [d]isregarding the jurisdictional findings of West Virginia and the unrefuted presence of jurisdictional claims from Florida and Brazil, both of which remained unresolved and neither of which declined jurisdiction; [p]ossibly asserting Texas as the child's home state despite clear contradiction with the UCCJEA and prior proceedings[.] This case involves disputed factual issues, including custody jurisdiction, alleged parental misconduct, and the child's home state. Without findings of fact, it is impossible to determine the reasoning behind the trial court's conclusions, much less challenge them.

The absence of findings prevents [Father] and this Court from determining whether the trial court relied on improper legal theories, disregarded binding UCCJEA requirements, or abused its discretion in assigning conservatorship and jurisdictional authority. This creates a void of judicial reasoning that frustrates appellate review and severely prejudices [Father]'s ability to challenge the judgment.

Moreover, the failure to issue findings at both the temporary and final stages reflects a pattern of procedural error. The trial court's decisions relied on flawed emergency assertions and untested allegations, cascading into a final judgment entered without any record support or explanation. The issue is compounded by the fact that the final hearing did not contain any evidence submitted nor any sworn testimony, leaving the judgment entirely unsubstantiated by the record. This procedural irregularity, in conjunction with jurisdictional errors, compels reversal of the trial court's orders in the interest of justice and due process.

(Citation to the record omitted).

It is unclear what "ruling" Father is challenging on appeal. The "critical rulings" Father lists above mostly challenge the trial court's subject-matter jurisdiction, which we already resolved. As to granting Mother primary custody, Father could have argued on appeal that the trial court abused its discretion, which, as explained above, does not require findings of fact and conclusions of law. *See Graves v. Graves*, 694 S.W.3d 814, 817 (Tex. App.—Houston [14th Dist.] 2024, no pet.) ("We review a trial court's ruling on possession, child support, and confirmation of arrearages for an abuse of discretion."); *Hous. Auth. of City of El Paso*, 550 S.W.3d at 711.

However, even if we assume that the trial court had a mandatory duty to file findings of fact and conclusions of law, its failure to do so was harmless because the record shows Father suffered no injury. *See In re I.J.D.*, 2023 WL 5487381, at *4 (assuming without deciding that the trial court was required to file findings of fact and conclusions of law and holding that appellant suffered no harm); *Willie*, 2025 WL 380519, at *5 (same). Mother testified that she should have primary custody over S.L.D.O.

16

because she was currently weaning S.L.D.O. off breast feeding, and she had been S.L.D.O.'s primary caretaker since birth. The evidence also showed that Mother stopped working as a registered nurse to care for S.L.D.O. Father largely argued that he should have primary custody because Mother was unemployed and had temporary housing, and Mother had prevented him from visiting S.L.D.O. various times after she moved to Texas.

Based on this evidence, Father has not shown that he had to guess at the trial court's reasoning for granting Mother primary custody and that he was prevented from properly presenting his case on appeal. *See In re I.J.D.*, 2023 WL 5487381, at *4; *Graves*, 694 S.W.3d at 819 (holding that Mother's testimony regarding the requested summer-possession schedule was sufficient to show the trial court's reasoning for entering a possession order that deviated from the standard possession order in the Family Code, and Father failed to show that "he had to guess the trial court's reasoning and that he was prevented from properly presenting his case on appeal"); *Willie*, 2025 WL 380519, at *5. We overrule Father's second issue.

## IV. SUFFICIENCY OF THE EVIDENCE

By his third and final issue, Father argues there was insufficient evidence to support the trial court's final judgment because "no evidence was introduced and no party was placed under oath during the final hearing." However, the trial court took judicial notice of the record at the final hearing, which included the thirty-three exhibits filed prior to the hearing, and all the evidence and testimony admitted at the temporary possession order hearing. *See* TEX. R. EVID. 201; *In re L.F.W.N.*, No. 13-23-00463-CV, 2024 WL 3448025, at *8 (Tex. App.—Corpus Christi–Edinburg July 18, 2024, no pet.) (mem. op.); *In re K.F.*, 402 S.W.3d 497, 505 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) ("A

trial court may take judicial notice of the records in its own court filed in the same case, with or without the request of a party."). Father does not address any of this evidence in his appellate brief on this issue. Further, Father waived any issue related to the unsworn testimony because he did not object at any point that the parties' testimony was unsworn. *See* TEX. R. APP. P. 33.1; *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997) (noting that failure to object to the attorney's testimony because it was unsworn waived the issue on appeal); *Darnell v. Broberg*, 565 S.W.3d 450, 462 (Tex. App.—El Paso 2018, no pet.) (holding that appellant waived the oath requirement after failing to object). Accordingly, we overrule Father's third issue.[7]

### V. CONCLUSION

The trial court's judgment is affirmed.

JON WEST
Justice

Delivered and filed on the
2nd day of July, 2026.

---

[7] We deny all pending motions as moot.